Chief Justice Robertson
delivered the opinion of the Court.
Okt the 29th of November, 1824, the sheriff of Bourbon, sold at auction, two young female slaves, to satisfy a fieri facias in his hands, in favor of Robert Luckie and against William Roseberry and Hugh Roseberry.
The slaves were the property of Wm. Roseberry, and were in his possession.
The sale was on a credit of two years, and Carey A. Huston, who was (he highest bidder, executed his bond for the price, with Hugh Roseberry, as his surety.
On the day of the sale, and immediately after the execution of the sale bond, Huston made to Hugh Roseberry, a bill of sale for the negroes, on the consideration alone, of a promise by Hugh, to pay the amount of the sale bord, when it should become due.
The slaves remained in the possession of William’ Roseberry, until December, 1826, when they were in the possession of the sheriff of Bourbon, for the purpose, as may be inferred, of being subjected to the payment of the sale bond, which was then due.
Whilst the slaves were in the custody of the sheriff, to-wit: on the 12th of December, 1826, Hugh Rose-berry made a bill of sale of them to George Brocken-ridge, on no other ostensible consideration, than the payment by Breckenridge, of the amount of the sale bond, which he (the said Hugh) had, as aforesaid, assumed to pay.
Immediately after this last arrangement, Brecken *711 ridge and W. Roseberry, requested the sheriff to keep the slaves until they should be sent for. The amount of the sale bond having been paid, and slaves formally delivered to Breckenridge; ihe sheriff kept them according to the request, until the next day, when they were sent for and taken away, and were shortly afterwards seen in the possession of Wm. Roseberry; in whose possession they remained, until the 31st of March, 1828, when they were sold and delivered by Wm. Roseberry to John Anderson, in Bul-litt county, for $400 paid by Anderson.
Breckenridge and Wm. Roseberry were near neigh-bours and cordial friends.
Wm. Roseberry having been prosecuted for forgery, fled from Bourbon, in January, 1828.
It does not appear, why, nor on what terms, he re4 Alined the possession of the two slaves.
On the 25th of April, 1828, George Breckenridge, (for the use of Thomas Arnold,) sued John Anderson in detinue, in the Bullitt circuit court, for the two slaves. The suit having been removed, at the instance of Breckenridge, to the Spencer circuit court, was there tried, and a verdict and judgment were rendered for Anderson; to reverso which, Breckenridge has appealed to this court.
The only question presented for consideration, by the assignment of errors, is whether the circuit court erred or not, in giving or withholding instructions, which'it was asked to give to the jury, during the trial?
The counsel for Breckenridge moved the court to instruct the jury.
1st. That the sale, by the sheriff, was not fraudulent perse, although Wm, Roseberry’ retainedthc possession of the slaves, after the sale, as before.
2d. That the bill of sale by Huston to Hugh Rose-berry was not fraudulent per se, if Huston did not retain the possession after the sale,
3d. That the bill of sale by Hugh Roseberry to George Breckenridge was notper sc fraudulent, unless the said Hugh retained possession.
4th. “That the sale made in December, 1826, from ,. Hugh Roseberry to plaintiff, was good and valid -in *712 Jaw, if possession was either delivered to Brocket.-**idgc or any person pointed out by him, to whom pos. session was to be delivered, for him, plaintiff, and that the vendor, H. Roseberry, parted with possession.”
The counsel for Anderson moved the court to instruct the jury.
1st. That, if they believed that, with the consent of Huston, the slaves remained in Wm. Roseberry’s possession after the sale by the sheriff, as before the sale, Huston’s claim derived from the purchase, was fraudulent perse, on a subsequent bona fide creditor of, or purchaser from Wm. Roseberry.
2d. “That the bill of sale from Huston to Hugh Roseberry, unaccompanied by possession held and delivered, was fraudulent, as to subsequent purchasers.”
3d. “That if the jury shall believe, that the ne-groes in contest, remained in the possession of Wm. Roseberry after the 12th of December, 1826, until the sale to Anderson, and he (W. Roseberry,) continued to exercise acts of ownership as before, with the consent, or with the knowledge of Breckenridge, then the mere temporary delivery of the possession, by Bledsoe, ((lie sheriff) with or without the consent of Wm. Roseberry, was, as to creditors and subsequent purchasers colorable and fraudulent; and that the sale by Roseberry to Anderson, in March, 1828, if the jury believe the evidence was good and valid, as it relates to George Breckenridge’s claim.”
The court refused to give the three first instructions asked for by the counsel for Breckenridge, and gave the two first asked for by the counsel for Anderson; and in lieu of the fourth, moved for by the former, and of the third, submitted by the latter, the court instructed the jury, “that if the possession was bona fidr.i delivered to plaintiff by Bledsoe, of the negroes Mahak: and Marinda, and that by the order of Hugh and William Roseberry, then the plaintiffought to recover; but, on the contrary, if the same was only colorable, aud that William Roseberry was to have and keep possession, and did retain possession of said negroes, then the same is a badge of fraud, as to creditors and purchasers, and they ought to find for defendant.
Possession must accompany, or be consistent with absolute saleof chat, tels by pirvate contract otherwise, sale is fraudulent in law. Sed aliltr, as to sales by officers of the law. Altho5 retention of possession by defendant in execution, after sale by sheriff, will not per se render sale fraudulent, it is evidence of fraud.
Sale may be fraudulent in law, for want of correspondence between the possession and contract, although, vendor did not retain posaes-si*n.
The eojart also instructed the jury, “that if they believed that the sale by H. Roseberry, on the 12th of December, 1826, was made in good faith, and the delivery made to plaintiff, at the time by H. and W. .Roseberry, as stated in the testimony of Bled&e,was In good faith, then they should find for the plaintiff; but if they believed the delivery was merely colorable, and that the property or possession was to revert to W. Roseberry, and did so revert and remain, then there were circumstances and badges, from which the jury might infer fraud.”
The appellant having excepted to the several opin' ions of the court, ^except such as were in his favor? moved for a new trial, which the court overruled.
It is not material, ax will presently appear, what reason influenced the court to withhold the first instruction proposed by the appellant.
Possession'must accompany, or be consistent with an absolute sale of chatties, made by voluntary private contract; otherwise, the sale is fraudulent in law, and iherefore cannot be sustained.
But the principle., wjiich denounces as a legal fraud, an absolute contract of sale, unaccompanied by the possession of the chattle sold, does not apply to coercive sales, under the process of the law.
The retention of the possession, by Wi H&S’seberry, after the sale by the sheriff, was not^er se fraudulent. But it may be evidence;of a fraudulent fací. It is not fraud itself, but only a fact which tends to prove fraud. (Farrington vs. Caswell, XV. Johnson, and the cases here cited.)
The counsel, who drew for the appellant the second md third propositions for instruction, must have misconceived the reason of fhe law.
To render a sale fraudulent in law, for a want of correspondence between the possession and the contract, it is not always essential that the vendor should retain file possession. The language of the authorities is, that “an absolute bill oftale is itself a fraud, unless possession accompanies and follows the. deed". see Hamilton vs. Russell, I, Cranch, 316-17, and the cases there cited.
If mere trustee, or nominal parly, holilil!;; title fur use of another, sell absolutely, whilst possession remains with beneficiary, sale is a fraud inlaw, unless possession be changed, or conform to the contract. Possession near! not accompany absolute salo of slave which is hired out.
Those authorities shew that, ‘‘if there is nothing hut the absolute conveyance without the possession, that, in point of law, is fraudulent.'1''
The vendor may have no beneficial interest. lie may beta mere trustee or nominal parlv. holding the, title for (house of another, if hr should sell absolutely the tiling thus held, whilst it is in the possession of the beneficiary, the sale would be a fraud in law, unless the possession should be changed and conformed to the contract.
It is not nece-sarv that the purchaser should contimtf always in the possession. A fter he acquires it, he may transfer it to another; but that other musí be a stranger to the contiact of purchase, and one who was not benolitte.d, nor intended to be, by the contract; unless the purchaser had enjoyed the possession and use, under his purchase, so an to rhew (hat the delivery oí' possession to him ivas not merely formal and colorable.
It may not be always necessary, even that the purchaser should be put into the actual possession. For instance, if A buy from 0, a slave in the possession of (J, on hire, his not being in the visible possession of the slave until after C’s term shall have expired, is neither fraud itself, nor alone, evidence of fraud.
In this case, if Hugh Roseberry held the title for the use andgbenefit of William Roseberry, the possession of fpecslaves by William, after Hugh’s absolute bill of sale to Breokenridge, would be fraudulent in law. It was virtually a sale by William, and was for his benefit.
And so also as to the sale by^Huston.
Chief Justice Marshall, with his usual precision, stated the true reason and policy of the doctrine, when in the care of Hamilton vs. Russell, ho said, “that fraudulent conveyance1!, which are made to secure to a debtor a beneficial interest, while his property is protected from creditors, will he most effectually prevented by declaring, that an absolute bill of sale is itself a fraud, unless possession accompanies and - follows the deed. This construction too, comports with the words of the act. Such a deed must be considered nr-'(nade with an intent "‘to delay, hinder, o*m defraud creditors,'"
*715 Tt results therefore, that whether the-bill of safe from Huston to H.'Roseberry, and that from the’latter to the appellant, were fraudulento/ not in law, not necessarily depend on the fact of possession by the vendors, but on the relation which subsisted between them, and Wm. Roseberry.
The court did not therefore err, in withholding, the. second and third instructions. They ought nbt to have been given without some qualification by the court. . . t
It is also dear, that (he court .did not err in. refusing to give the fourth instruction.
The first and second instructions given.by thecouj^ on the motion of the dciqudimt, were the converse of tlie first and second,moved, by tlu; appellant’s counsel. The .court therefore erred in giving Uieui. As to the first, there can be nbdouot ttiat uie court erred, and ás to tlifi,second, it'isiriau'uest ttiat, i{ the purcliase and sale by Huston were bona fide, and it Hugh R6se-: berry permitted" William'to hold - the possession, o‘b I'oan or liife'j witpont ány secret “trust or áhy interest in the title, such a'posseSsion rnl^ht nót be fraudulent.
Bu.t, if W. Roseberry bad,any beneficial interest in the slaves, after tne sale,-by the sheriff then his subsequent possession would invalidate.thesade to Huston, and that to H. Roseberry.
Wherefore, the second instruction was too positive and comprehensive.
But although the oourt .erred in giving these two instructions, that error was inoffensive to the appellant. Assto nimj the instructions were abstract, irrelevant and inoperative, for two reasons:
1st. Notwithstanding the sale to Huston, and that, to Hugh Roseberry may have been legal frauds, it would not be a necessary consequence, that the sale to the appellant was fraudulent. The bill of sale to him was made with the assent and active concurrence ofWm. Roseberry; if tlio former transfers had not divested William of his right, so far as his creditors or subsequent purchasers from him might be concerned, then he and Hugh had a right to sell to a bona fide purchaser, and if they did so, fairly and honestly, that purchaser would have a better right, than one who *716 purchased after he did, unless there was something *n his contract, which would tinge it with fraud, and which the subsequent purchaser could take advantage. His right, therefore, must be tested by the peculiar facts of his own contract. If he bad bought only the title of Hugh Roseberry, he might not be vested with a better title, t.-an Hugh had, and might be considered as standing in the attitude, in which Hugh stood. But, as he acquired, (if his purchase were fair and legal,) all the right of both William and Hugh, be cannot necessarily be affected by any defect or illegality in the purchase by Hugh.
2d. The fourth and fifth instructions which were given by the rourt, separated the contract of the appellant from those by Huston and Hugh Roseberry, and directed the jury to find for him, unless they believed, that his contract was fraudulent in Jact.”
This was as much as he could have demanded, and is as much as he was entitled to. We are inclined to the opinion, that the court went too far in his favor, in giving this instruction. But however this may be, the jury were instructed to find for him, if they believed that his purchase was bona Jide, although the precedent bills of sale might be fraudulent in Jaw. He was therefore unaffected by the erroneous instructions as to the bills of sale to Huston and to Hugh Rose-berry, and consequently as he was not injured by them. He cannot complain of any abstract error, which the court may have committed in giving them. The jury were left free to find for him, if they could believe that his purchase was not infected with fraud in fact.
Iri finding a verdict against him, it must be presumed therefore, that the jury were of the opinion, that his purchase was colorable, and really for the benefit of W. Roseberry.
This opinion was justified by the evidence, and it would be somewhat difficult to defend any other deduction from all the facts of the case.
The error of the court, therefore, in giving these two instructions, did not entitle the appellant to a new trial.
Nor is the error in withholding the first instruction moved by him, sufficient for the reversal of the judgment.
If court (five j„ry“generally, for that pause atone, ■{,“ ^veiled.1 When verdict i« conformá-evMence'* if will not be eel aside merely refhsed^o0^ &íve insir.u?" m?ghthavo been properly Klven’
Hardin^ for appellant; C. A. Wickliffe, for appellee.
Withholding a proper instruction, has not the same effect, as giving an improper one. By the latter, the jury is deceived; but by the former, they are left unembarrassed, to try the caseon-its merits, according to their own opinions of right and justice.
If a circuit court give an erroneous instruction, whereby one of the parties may be prejudiced, this court will generally, for that cause alone, reverse the judgment. .
Granting a new trial is a matter of sound discretion, and a verdict should not be disturbed, unless it be contrary to the evidence or the law, or was superinduced by, the improper act of the court. When the verdict is conformable to the law and the evidence, it will net be set aside, merely because the court refused to give instructions, which might have been properly given. Thomas et ux. vs. Tanner, VI. Monroe, 61.
As therefore, the evidence and the law both sustain the verdict in this case, the judgment of the circuit court is affirmed with costs and damages.